IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **LEO BRANDON FARNSWORTH,** | ) | Civil Action No. 7:20-cv-00264 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| **MELVIN C. DAVIS, et al.,** | ) | Chief United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Leo Brandon Farnsworth, a Virginia inmate proceeding pro se, filed this 42 U.S.C. § 1983 action asserting claims against Warden Davis (the Warden of Green Rock Correctional Center at the time of the events alleged in the complaint), Harold Clarke (Director of the Virginia Department of Corrections ("VDOC")), Virginia Governor Ralph Northam, and Brian Moran (Director of Public Safety for the Commonwealth of Virginia).

Defendants interpret the amended complaint, ECF No. 15, as asserting the following claims brought against all defendants, and plaintiff does not dispute their characterization. First, Farnsworth asserts a claim, brought pursuant to the First Amendment (Count I) and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq., (Count II), that defendants violated his religious exercise rights when they suspended in-person religious services in an attempt to contain the spread of COVID-19. Second, he contends that on July 21, 2020, defendants violated his Eighth Amendment rights when they failed to protect him from a physical attack by his cellmate, Inmate Davis.

Pending before the court are a number of motions, including a motion for summary judgment or, in the alternative, a motion to sever, by defendants. ECF No. 45. Defendants first argue that all of Farnsworth's claims should be dismissed because he failed to exhaust his

administrative remedies. In the alternative, defendants ask that the court sever the case into two cases—one consisting of the two religious exercise claims and the second consisting only of the Eighth Amendment failure-to-protect claim.

In response, Farnsworth has indicated that he joins in the request for a severance. ECF No. 52; see also ECF No. 51 at 7 ("Plaintiff voluntarily agrees with [defendants' counsel] that a motion to sever should be granted."). The court, too, agrees that severance is appropriate. In particular, Farnsworth's religious exercise claims, which include claims against Governor Northam stemming from Executive Orders he entered, have no relation to the failure-to-protect claim. Thus, the court will sever this case into two cases and will require Farnsworth to submit in the new case an amended complaint that raises only the religious exercise claims.

As to the Eighth Amendment claim remaining in this case, the court concludes that there are disputes of fact as to the issue of exhaustion, and those facts preclude the grant of summary judgment in any party's favor. Defendants' motion for summary judgment, therefore, will be denied to the extent it seeks summary judgment on this basis, but it will be granted in part as to the request for the dismissal of claims for money damages against defendants in their official capacities. Also, because there are disputes of fact on the issue of exhaustion, Farnsworth's motion for summary judgment, to the extent it seeks summary judgment on the merits, will be denied without prejudice.

The court's reasoning behind its rulings is discussed in more detail herein, and the court also addresses the other pending motions in the case.

I. DISCUSSION

**A. Severance**

As already noted, the parties agree that plaintiff's claims should be severed into two cases; indeed, both parties have moved for severance. Moreover, the court finds severance appropriate in this case. Even if the claims are not improperly joined under Federal Rules of Civil Procedure 18 and 20, Rule 21 allows a court the discretion to "sever any claim against a party" and proceed with it separately. Fed. R. Civ. P. 21; Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc., 498 F.2d 358, 362 (2d Cir. 1974) ("[J]ustification for severance is not confined to misjoinder of parties.").

Use of Rule 21 has been approved by circuit courts in the context of prisoner complaints, with and without misjoinder. See Daker v. Head, 730 F. App'x 765, 768 (11th Cir. 2018) (explaining that district court should have severed unrelated claims under Rule 21 and sua sponte dismissed improper defendants rather than dismissing prisoner's amended complaint); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (holding that district court should have severed case into separate actions or dismissed improperly joined defendants). In determining whether severance is proper, courts consider whether the issues to be severed are significantly different from one another, will require different witnesses or different documentary proof, and the prejudice to any party as to the decision of whether to sever. See Equal Rights Ctr. v. Equity Residential, 483 F. Supp. 2d 482, 489 (D. Md. 2007).

Here, those factors all weigh in favor of severance. Although some of the defendants overlap between the two types of claims, the facts underlying each claim are entirely distinct, based on different events, and will require different witnesses and proof. At least two of the

3

defendants are not parties to the failure-to-protect claims and would be prejudiced by the joinder of both types of claims. Equally as importantly, allowing Farnsworth to bring disparate claims in a single suit is contrary to the purposes of the Prison Litigation Reform Act ("PLRA"). It would effectively allow Farnsworth to challenge unrelated actions by different defendants in a single suit, circumventing both the PLRA's filing fee requirements and possibly its three-strike rule. See 28 U.S.C. § 1915(b)(1), (g).

For all of these reasons, the court will direct that the religious exercise claims be severed, and the Clerk will be directed to open a new lawsuit. After Farnsworth complies with the financial requirements in that case, the court will direct that he file an amended complaint, setting forth only those claims.[1]

## B. Summary Judgment

### 1. Official Capacity Damages

In their motion, defendants correctly note that a plaintiff may not recover damages against state officials sued in their official capacities. ECF No. 46 at 14–15. Such claims are

---

[1] Although Farnsworth will be required to pay a second filing fee, this is consistent with the PLRA, as noted. Moreover, severance may benefit Farnsworth in another respect. Specifically, defendants' primary argument as to exhaustion of the religious exercise claims is that Farnsworth did not completely exhaust until after he filed both his original complaint and his amended complaint, which is insufficient; the PLRA requires exhaustion before filing suit. See, e.g., Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 675 (4th Cir. 2005) (stating that the PLRA requires exhaustion "before filing an action"); see also Hayes v. Stanley, 204 F. App'x 304, 304 n.1 (4th Cir. 2006) ("We conclude that the defect in this case (the failure to exhaust administrative remedies) can only be cured by something more than an amendment to the complaint . . . ."). Farnsworth, too, states that he exhausted his state remedies "as of December 1, 2020," ECF No. 51 at 10, which was after he filed his complaint in May 2020 and his amended complaint in August 2020.
After financial requirements are satisfied in the new case, the court also will direct Farnsworth to file a new complaint in that case. The filing date of both the new case and any amended complaint Farnsworth files, therefore, will be after the date that Farnsworth says he exhausted (December 2020). Thus, defendants' primary argument regarding exhaustion of those claims will be eliminated, which benefits Farnsworth.
In addition to arguing that he exhausted his religious exercise religious claims after filing his amended complaint, Farnsworth also alleges that defendant Davis "unfounded Farnsworth's grievance after denying him in 'bad faith' access to the adult grievance procedure as of March 16, 2020." These arguments can be addressed, if necessary, in the newly created case.

considered claims against the state, and the state has Eleventh Amendment immunity from suit. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). Although a plaintiff may obtain prospective injunctive relief in appropriate circumstances, the Eleventh Amendment prohibits federal courts from considering claims for money damages under § 1983 against defendants in their official capacities. Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Thus, defendants' motion for summary judgment will be granted in part insofar as it seeks the dismissal of all claims for money damages against defendants in their official capacities.

**2. Exhaustion**

Defendants also seek summary judgment on the grounds that Farnsworth failed to exhaust his administrative remedies. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "allow[s] a prison to address complaints . . . before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improve[es] litigation that does occur by leading to the preparation of a useful record." Jones v. Bock, 549 U.S. 199, 219 (2007). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Id. at 211.

The PLRA requires "proper exhaustion" of available remedies prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 90 (2006). "[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding."

Id. at 90–91. Thus, an inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. Id. at 90. Notably, moreover, district courts may not "excuse a failure to exhaust." Ross v. Blake, 578 U.S. 1174, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the inmate. Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859–60. Federal courts are "obligated to ensure that any defects in exhaustion were not procured from the action or

6

inaction of prison officials." Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010).

VDOC Operating Procedure ("OP") 866.1, titled Offender Grievance Procedure, is the mechanism used to resolve inmate complaints within VDOC. Encl. A to Massenburg Aff., ECF No. 50-1. For purposes of Farnsworth's failure-to-protect claim, only a rudimentary overview of the process is required. It involves three basic steps, and all have set time-frames for the inmate to file and for staff to respond. First, the inmate must make a good faith effort to resolve the issue informally through the available procedures, generally by submitting an informal complaint form to the grievance department. Second, if the informal resolution effort fails or the inmate does not receive a timely response, the inmate must file a regular grievance. Third, if the inmate is dissatisfied with the response to his regular grievance, he may file an appeal. See generally id.

### 3. Farnsworth's Attempts at Exhaustion–Failure-to-Protect Claim

According to the affidavit of S. Massenburg, Farnsworth filed an informal complaint on July 25, 2020, related to the attack by Inmate Davis. In it, he noted that Inmate Davis had assaulted him, and he stated that he had not seen a magistrate or an enemy statement.[2] Unit Manager Bateman responded to the informal complaint on July 28, advising Farnsworth, "After speaking with the Institutional Investigator the situation was investigated and you and Offender Davis were placed on separate sides of the yard due to the altercation." Massenburg Aff. ¶ 21. On July 30, the grievance office received a regular grievance that attached this informal complaint. Id. ¶ 20. In it, Farnsworth stated that he wanted to list Inmate Davis as an enemy and to file a street charge against him. Id.

---

[2] The informal complaint and grievance also requested relief relevant to other allegations that Farnsworth did not include in his amended complaint.

On August 3, Farnsworth withdrew this regular grievance. His signature on the form acknowledged that he wanted to voluntarily withdraw the grievance and he understood that there would be no further action on the issue nor would he be able to file any other grievance in the future on this issue. Id. ¶ 22 & Encl. E, ECF No. 50-1, at 30. Likewise, because he withdrew the grievance, he did not appeal. Thus, he did not properly or fully exhaust this claim. Id. ¶ 23.

Farnsworth does not dispute that he withdrew the grievance, but he contends that the withdrawal was not voluntary. In particular, he presents sworn testimony that he "was threaten[ed] with retaliation by Unit Manager Randall Bateman by having him placed in Restrictive Housing." ECF No. 56 at 4; see also Farnsworth Aff. at 3, ECF No. 58 (stating he "was threatened by Unit Manager Randall Bateman to withdraw his grievance or be housed in restrictive housing").

Bateman's own affidavit describes the conversation that he had with Farnsworth that led to the withdrawal of the grievance. ECF No. 27-2, ¶¶ 9–10. Nowhere does Bateman reference that he told Farnsworth that if he did not withdraw his grievance, he would be housed in restrictive housing. Bateman states that Farnsworth "was worried that offenders were going to find out about information he had given Sgt. Warring about illegal activities in the pod." Id. ¶ 9. Bateman responded that the "grievance had nothing to do with that, but was about him and offender Davis." Id. Farnsworth said that he had "anxiety about the other offenders finding out, but that he felt better after talking to [Bateman]." Id. Bateman also stated that they talked about a "keep separate," the policy that "governs separating offenders." Id. He further explains what he conveyed to Farnsworth about how he would not come into

contact again with Inmate Davis, who had been moved to another part of the facility. After their discussion, Farnsworth "was okay with the situation and withdrew the Regular Grievance." Id. ¶ 10.

Based on their different versions of this conversation, the court finds that there is a dispute of fact as to whether Farnsworth was coerced into withdrawing his grievance by Bateman, based on the threat of being housed in restrictive housing.[3] If Farnsworth's version were believed, then it is possible that the remedy was not "available" to him. See, e.g., Bacon v. Curry, No. 7:18CV00262, 2019 WL 2425682, at *2 (W.D. Va. June 10, 2019) (denying summary judgment as to exhaustion where plaintiff alleged that prison officials threatened to place him back in segregation if he did not withdraw his complaints); see also Ross, 136 S. Ct. at 1862 (noting that an inmate may be able to show the grievance procedure was unavailable if prison officials "thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation"). Because of this dispute of fact as to whether the remedies were "available" to Farnsworth, defendants' motion for summary judgment will be denied as to Farnsworth's failure-to-protect claim arising from the attack by Inmate Davis.

The same disputed facts also preclude summary judgment in Farnsworth's favor as to the merits of his claims. Because exhaustion is a threshold issue, Farnsworth is not entitled to

---

[3] The other issue raised in the grievance appeared to seek protection from many unidentified inmates. It is perhaps possible, therefore, that Bateman told Farnsworth that if he did not withdraw the grievance he would be placed in segregation, not as a threat or coercive tactic, but because the complaint in his grievance about being at risk of an attack from other inmates might require it. But Bateman's affidavit does not indicate that there was any discussion at all about Farnsworth being placed in segregation. In addressing defendants' summary judgment motion, moreover, all reasonable inferences must be drawn in favor of Farnsworth, the non-moving party. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

summary judgment unless—and until—that issue has been resolved in his favor. Thus, his summary judgment motion will be denied without prejudice.[4]

In light of the court's denial of summary judgment as to exhaustion, the court will direct defendants to file a notice with the court within fourteen days stating whether they intend to file a motion for summary judgment on the merits of the failure-to-protect claim. If they elect to do so, defendants shall have forty-five days from the entry of this opinion and order to file their summary judgment motion. If they elect not to file a summary judgment motion at this time, then the court will refer the case to the magistrate judge for further proceedings solely on the issue of exhaustion.[5]

### C. Other Pending Motions

Also pending before the court are several other motions filed by Farnsworth. Farnsworth's requests for an evidentiary hearing, ECF Nos. 57, 59 will be denied without prejudice. In the event that the matter is referred to the magistrate judge and he concludes that a hearing is required to resolve the dispute as to exhaustion, one will be held.

Farnsworth's motion to amend requests to add two additional defendants. The first is Barry Kanode, the current Warden of "Green Rock," who Farnsworth alleges has continued the denial of Farnsworth's religious rights. The second is Major Northrop, the Chief of Security for Green Rock, and Farnsworth alleges that "all rules/policies/procedures and

---

[4] Farnsworth's summary judgment motion is deficient in other respects, as well. In light of its ruling, though, the court does not address the other deficiencies identified by defendants in their response.

[5] "The circuit courts of appeals have uniformly found that a judge can resolve factual disputes concerning exhaustion of administrative remedies under the PLRA." Hill v. Haynes, No. 3:06-CV-136, 2014 WL 4197588, at *3 (N.D.W. Va. Aug. 22, 2014), aff'd, 591 F. App'x 223 (4th Cir. 2015) (unpublished). Such questions of law arising in prisoner civil rights actions may be referred to a magistrate judge for factual development and preparation of a report making proposed findings of fact, conclusions of law, and recommended disposition of the issue. 28 U.S.C. § 636(b)(1)(B), (C).

security concerns go through Major Northrop." ECF No. 53 at 2; see also ECF No. 52-1 at 4. It appears that Farnsworth seeks to add Kanode only as to the religious exercise claims, although it unclear whether he wants to add Northrop only as to his religious exercise claims, or also as to his failure-to-protect claim.

To the extent he seeks to add these defendants solely as to his religious exercise claims, he may do so in the new case that will contain those claims. When Farnsworth files his amended complaint in that case, he may include Kanode and Northrop as defendants. If he wants to add Northrop to the failure-to-protect claim in this case, he must file a motion for leave to amend and include a proposed second amended complaint. His proposed second amended complaint should contain specific factual allegations as to what each defendant did that Farnsworth believes violated his Eighth Amendment rights. In the meantime, his motion to amend, ECF No. 53, will be denied without prejudice.

## II. CONCLUSION

For the reasons set forth herein, the court will grant both defendants' and plaintiff's motion to sever and sever plaintiff's claims into two lawsuits. The court also will grant in part and deny in part defendants' motion for summary judgment, deny without prejudice plaintiff's motion for summary judgment, and deny plaintiff's remaining motions without prejudice. These rulings will be set forth in an appropriate order.

It is so **ORDERED**.

Entered: September 2, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.09.02 10:35:41
-04'00'

Michael F. Urbanski
Chief United States District Judge